**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

**ANGELA PISTORIUS,**

**Plaintiff,**

**v.** **Case No. 3:26-cv-00657**

**WV DIVISION OF CORRECTIONS AND REHABILITATION and WEXFORD HEALTH SOURCES INCORPORATED,**

**Defendants.**

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are Plaintiff Angela Pistorius's Application to Proceed Without Prepayment of Fees and Costs, (ECF No. 1); her *pro se* Complaint filed pursuant to 42 U.S.C. § 1983, (ECF No. 3); and her Motion for Appointment of Counsel, (ECF No. 4). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and is referred to the undersigned United States Magistrate Judge, sitting by designation, for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF No. 5). Having now performed an initial review of the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, the undersigned finds certain deficiencies in pleading that must be corrected by Plaintiff before this action can proceed. For the reasons that follow, the Court **GRANTS** the Application, **DENIES** the Motion for Appointment of Counsel without prejudice, and **ORDERS** Plaintiff to file an Amended Complaint on or before **November 18, 2026**.

## I. Relevant History

Plaintiff, Angela Pistorius, is currently an inmate at Lakin Correctional Center

("Lakin") in West Columbia, West Virginia. (ECF No. 3 at 3). On October 13, 2026, Plaintiff filed a Complaint pursuant to 42 U.S.C. § 1983 in the United States District Court for the Southern District of West Virginia. (*Id.*). Plaintiff names the West Virginia Division of Corrections and Rehabilitation ("WVDCR") and Wexford Health Sources, Inc. ("Wexford") as Defendants. (*Id.* at 1, 4). The following facts are set forth in Plaintiff's Complaint. They are only allegations at this stage, and the Court accepts them as true solely for purposes of this initial screening. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Plaintiff alleges in this action that Defendants were deliberately indifferent to her serious medical needs in violation of the Eighth Amendment by failing to provide adequate care for a chronic wound on her right leg over a period of more than four years. (*Id.* at 4–12).

According to the Complaint, Plaintiff's condition began in approximately February 2021, while she was incarcerated at the Southwestern Regional Jail. (*Id.* at 6). She states that she was prescribed antibiotics for what was diagnosed as a spider bite on her right leg. (*Id.*). When she was transferred to Lakin in June 2021, the wound had not healed. (*Id.*). Plaintiff alleges that she received only basic bandage changes, and the wound grew, tunneled deep into her leg, became infected with MRSA, and spread to other areas of her body. (*Id.* at 6–7).

Plaintiff asserts that from April through November 2022, Lakin had no medical provider. (*Id.* at 7). Plaintiff claims that during that period she received no meaningful medical intervention, and her wound swelled, burst, and tunneled deep into the tissue, requiring internal packing. (*Id.*). COVID-related lockdowns suspended sick call; thus, Plaintiff was forced to bandage herself and to ask correctional officers to call medical staff for dressing changes, requests that often went unfulfilled. (*Id.*). On October 26, 2022,

wound cultures returned positive for CRE and Klebsiella bacteria, and a wound specialist recommended evaluation by a general surgeon and an infectious disease specialist. (*Id.*). Plaintiff was not taken to the Marshall University Wound Clinic until January 2023 at which point clinicians determined that surgery was required. (*Id.*).

On April 21, 2023, Dr. Yinan Wei, a surgeon at Marshall University, evaluated Plaintiff, and on May 9, 2023, she performed an excisional debridement of the wound at St. Mary's Medical Center. (*Id.* at 7–8). Dr. Wei prescribed narcotic pain medication for Plaintiff to take following surgery, but Lakin refused to dispense it because it was not on Plaintiff's approved medication list. (*Id.* at 8). The facility only provided Plaintiff with Motrin. (*Id.*). On June 7, 2023, the Cabell Huntington Hospital Wound Care Center recommended wound vacuum therapy, strict offloading, and biweekly follow-up appointments at Marshall University. (*Id.*). Plaintiff alleges that, although Lakin and its medical staff were advised of these instructions, she was not taken to the follow-up appointments, and the wound vacuum was not provided until about a month after surgery. (*Id.* at 8–9). When it was provided, staff installed it incorrectly and did not know how to operate or maintain it, which damaged healthy tissue and led to an additional Klebsiella pneumoniae infection. (*Id.* at 9). Physicians at Marshall University discontinued the wound vacuum and determined that she needed another surgery. (*Id.*).

In February 2024, Dr. Henry Derbes assumed care of Plaintiff's wound at Lakin and prescribed wound vacuum therapy and multiple debridements, but the wound vacuum was denied at "collegial review" despite his repeated requests for reconsideration. (*Id.*). On March 27, 2024, Dr. Derbes performed a debridement lasting forty-five minutes to an hour in an examination room in Lakin's medical department, which Plaintiff alleges is not equipped with a sterile environment. (*Id.* at 9–10). No correctional officer was

present, the nurse left the room several times, and the curtain was left open while Plaintiff lay face down with her lower body unclothed, exposing her to staff and inmates passing in the corridor. (*Id.* at 10). Plaintiff alleges that Dr. Derbes was terminated from his employment at Lakin within days and that, despite her requests, no investigation was conducted or its results disclosed to her. (*Id.*).

In April and May 2024, clinicians at Marshall University determined that Plaintiff needed additional surgery and offered to schedule it once Lakin confirmed that her post-operative care would not be limited. (*Id.* at 10–11). Plaintiff alleges that the confirmation was never provided, and Marshall University stopped treating her. (*Id.* at 11). In December 2024, physicians at West Virginia University ("WVU") determined that she required two surgeries and two open flap procedures. (*Id.*). The surgeries went unscheduled for months because delays in transporting Plaintiff to appointments caused her pre-operative test results to expire, requiring the testing to be repeated. (*Id.*). On November 4, 2025, WVU surgeons performed an open flap procedure on her right upper thigh and gluteal area, removing approximately 28 percent of her tissue, including muscle, and debrided MRSA-infected tissue on her left inner thigh. (*Id.* at 11–12). A surgical drain remained in place until January 2026. (*Id.* at 12). At a September 2026 appointment at WVU, the wound still had not healed. (*Id.*).

Plaintiff alleges that Defendants' deliberate indifference has caused her tremendous pain and suffering and the loss of part of her leg, and that she remains at serious risk of losing her leg or her life. (*Id.*). She asks the Court to hold Defendants accountable, ensure that she receives proper medical care, and award appropriate compensation. (*Id.* at 5).

## II. Application to Proceed Without Prepayment of Fees and Costs

A prisoner may bring a civil action without prepaying the filing fee if she submits an affidavit showing that she is unable to pay it, together with a certified copy of her inmate account statement for the six-month period preceding the filing of the complaint. 28 U.S.C. § 1915(a)(1)–(2). Plaintiff's Application and the certificate of her inmate account show that she lacks the funds to prepay the $350.00 filing fee. (ECF Nos. 1, 2-1). Accordingly, the Application is **GRANTED**.

A prisoner who proceeds without prepayment of fees remains obligated to pay the full filing fee in installments. 28 U.S.C. § 1915(b)(1). The Court must first assess an initial partial filing fee equal to twenty percent of the greater of the average monthly deposits to her inmate account or the average monthly balance in her inmate account for the six-month period preceding the filing of the Complaint. *Id.* Plaintiff's institutional account information reflects average monthly deposits of $69.60 and an average monthly balance of $132.57. (ECF No. 2-1). Twenty percent of the greater amount, $132.57, is $26.51. The Court therefore **ASSESSES** an initial partial filing fee of $26.51. Plaintiff has executed an authorization permitting the release of her inmate account information and the payment of the filing fee from her inmate account. (ECF No. 2). Lakin, or any other agency or facility having custody of Plaintiff, is **ORDERED** to withdraw $26.51 from Plaintiff's inmate account and forward it to the Clerk of Court within thirty (30) days of entry of this Order. If Plaintiff's inmate account does not contain sufficient funds during that period, the facility shall forward the initial partial filing fee as soon as sufficient funds become available. *See* 28 U.S.C. § 1915(b)(1).

Beginning December 5, 2026, or after the initial partial filing fee has been paid, whichever is later, and on the fifth day of each month thereafter, monthly payments shall

be made in an amount equal to twenty percent of the preceding month's income credited to Plaintiff's inmate account until the full filing fee of $350.00 has been paid. Lakin, or any other agency or facility having custody of Plaintiff, is **ORDERED** to forward payments from Plaintiff's inmate account to the Clerk of Court each time the amount in Plaintiff's inmate account exceeds $10.00 until the full filing fee is paid. *See* 28 U.S.C. § 1915(b)(2).

It is **ORDERED** and **NOTICED** that the recovery, if any, obtained in this action shall be paid to the Clerk of Court who shall collect therefrom all unpaid fees and costs taxed against Plaintiff and shall pay the balance, if any, to Plaintiff.

## III. Motion for Appointment of Counsel

Plaintiff has also moved for the appointment of counsel. (ECF No. 4). For the reasons that follow, the motion is **DENIED**, without prejudice to reconsideration of Plaintiff's request for counsel in the future. Plaintiff has no constitutional right to counsel in an action brought under 42 U.S.C. § 1983. *See* 28 U.S.C. § 1915(e)(1); *see also Hardwick v. Ault*, 517 F.2d 295, 298 (5th Cir. 1975). Although the Court has some discretion in assigning counsel, the United States Court of Appeals for the Fourth Circuit has clearly stated that motions for the appointment of counsel in civil actions should be granted "only in exceptional cases." *Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975). To determine whether exceptional circumstances exist, the Court must consider (1) whether the plaintiff has a colorable claim, and (2) whether, in light of the objective complexity of the claim and the plaintiff's subjective abilities, the plaintiff lacks the capacity to present it. *Jenkins v. Woodard*, 109 F.4th 242, 247 (4th Cir. 2024); *see also Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984).

Here, Plaintiff's motion states only that she is incarcerated, indigent, and without

sufficient funds to pay an attorney. (ECF No. 4 at 1). None of these circumstances, separately or together, constitutes an "exceptional" ground that merits the appointment of counsel at this point in the litigation. While Plaintiff's incarceration might make it more difficult for her to prosecute her lawsuit, that circumstance does not, in and of itself, satisfy the "exceptional" standard. *See, e.g.*, *Louis v. Martinez*, No. 5:08-cv-151, 2010 WL 1484302, at *1 (N.D.W. Va. Apr. 12, 2010). Indigence is likewise common to nearly every litigant who proceeds without prepayment of fees. Plaintiff also states that she has not attempted to retain counsel. (ECF No. 3 at 13).

Turning to the two factors, Plaintiff's allegations of a prolonged denial of medical care may state a colorable claim, although, as explained in Part IV below, the Complaint does not yet name a proper defendant. The undersigned has also examined the Complaint and finds that Plaintiff has clearly communicated her claims. Her Complaint presents a detailed, coherent, and chronological account of her medical treatment, (ECF No. 3 at 4–12), and the task now before her, identifying the persons responsible and describing their conduct, rests on facts within her personal knowledge. Consequently, she appears capable of presenting her claims at this stage of the proceedings. Should Plaintiff's circumstances change as the case progresses, particularly if her claims proceed to discovery or require expert medical testimony, the Court may reconsider this ruling.

## IV. <u>Deficiencies in the Complaint</u>

### *A. Standard of Review*

The Court must screen a complaint in which a prisoner seeks redress from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss the complaint, or any portion of it, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief

from a defendant who is immune from such relief. *Id.* § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B). A complaint is frivolous if it lacks an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

To state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must plead enough facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when the facts alleged allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Labels, conclusions, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not enough. *Id.*

The Court construes *pro se* pleadings liberally and holds them to less stringent standards than pleadings drafted by attorneys. *Erickson*, 551 U.S. at 94. Liberal construction does not, however, permit the Court to ignore a clear failure to allege facts setting forth a cognizable claim, *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990), or to act as the plaintiff's advocate and construct claims she has not raised, *see Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). At the same time, to achieve justice, the Court may allow a *pro se* plaintiff the opportunity to amend her complaint in order to correct deficiencies in the pleading. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978).

### ***B. Deliberate Indifference***

Plaintiff alleges that Defendants were deliberately indifferent to her serious medical needs in violation of the Eighth Amendment. (ECF No. 3 at 4–6). The Eighth Amendment's prohibition of cruel and unusual punishment is violated when prison

officials act with deliberate indifference to an inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A claim has two components. Objectively, the medical need must be serious, meaning one that has been diagnosed by a physician as mandating treatment or that is so obvious that even a lay person would recognize the need for a doctor's attention. *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Subjectively, the official must have actually known of and disregarded an excessive risk to the inmate's health. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). Negligence or medical malpractice does not meet this standard, *Estelle*, 429 U.S. at 106, nor does a disagreement between an inmate and medical staff over the proper course of treatment, *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985). An official who knowingly delays or denies necessary treatment, or who ignores the instructions of a treating physician, however, may be deliberately indifferent. *Estelle*, 429 U.S. at 104–05; *Scinto v. Stansberry*, 841 F.3d 219, 229 (4th Cir. 2016).

Read liberally, Plaintiff's allegations of a chronic infected wound requiring multiple surgeries describe a serious medical need, and her allegations of prolonged delays, refused medication, and disregarded post-surgical instructions may support a claim of deliberate indifference. (ECF No. 3 at 6–12). In its current form, however, the Complaint does not name a defendant against whom most of those claims may proceed. (*Id.* at 1, 4). The Court addresses each deficiency below so that Plaintiff may correct it in an amended complaint.

### *C. West Virginia Division of Corrections and Rehabilitation*

Section 1983 provides a cause of action only against a "person" acting under color of state law. 42 U.S.C. § 1983. A state agency is not a "person" under § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). In addition, the Eleventh

Amendment bars suits in federal court against a state and its agencies, regardless of the relief sought, unless the state has consented. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). The WVDCR is an agency of the State of West Virginia, and West Virginia has not consented to suit. Plaintiff therefore cannot proceed against the WVDCR on any of her claims.

To the extent Plaintiff seeks injunctive relief, such as an order directing that she receive particular medical care, (ECF No. 3 at 5), she may name the appropriate state official in his or her official capacity. A state official sued in an official capacity for prospective injunctive relief is a "person" under § 1983. *Will*, 491 U.S. at 71 n.10; *see Ex parte Young*, 209 U.S. 123, 159–60 (1908). Damages, however, are not available against state officials in their official capacities. *Will*, 491 U.S. at 71.

***D. Wexford Health Sources, Inc.***

A private corporation that contracts with the state to provide medical care to inmates acts under color of state law. *See West v. Atkins*, 487 U.S. 42, 54–56 (1988). A corporation is not, however, liable under § 1983 merely because it employs someone who violated an inmate's rights. *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 727–28 (4th Cir. 1999). Instead, as with a municipality, the corporation is liable only when an official policy or custom of the corporation causes the deprivation. *Id.*; *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). A policy or custom may arise from (1) an express policy, such as a written rule; (2) the decisions of a person with final policymaking authority; (3) an omission, such as a failure to properly train employees, that manifests deliberate indifference to the rights of inmates; or (4) a practice so persistent and widespread as to constitute a custom with the force of law. *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003).

The Complaint refers generally to Defendants' "systemic" failures and an "ongoing

and pervasive pattern" of indifference, (ECF No. 3 at 5–6), but does not identify any Wexford policy or custom or explain how it caused Plaintiff's injuries. If Plaintiff contends that any decision described in her Complaint resulted from a Wexford policy, practice, or custom, she must identify that policy, practice, or custom and allege facts showing how it caused her injury. The Complaint also does not state when Wexford provided medical services at Lakin. Plaintiff should allege the period during which Wexford was responsible for her care, because Wexford can be liable only for conduct during that period.

***E. Individual Defendants***

Liability under § 1983 is personal. Each defendant must have personally participated in the alleged violation. *Iqbal*, 556 U.S. at 676; *Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017). A supervisor is not liable for the conduct of subordinates unless the supervisor had actual or constructive knowledge that a subordinate's conduct posed a pervasive and unreasonable risk of constitutional injury, responded with deliberate indifference, and thereby caused the injury. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

The Complaint refers to medical staff, nurses, physicians (including Dr. Henry Derbes), the "collegial review" decisionmakers, and correctional staff, but names none of them as defendants. (ECF No. 3 at 4, 8–10). The Complaint also does not identify who conducted the "collegial review" at which Dr. Derbes's request for a wound vacuum was denied, or whether that review was conducted by Wexford. (*Id.* at 9). That information bears on both her claims against Wexford and any claims against individuals. If Plaintiff seeks relief against any individual, she must name that person and state what that person did or failed to do, and when. If Plaintiff does not know a person's name, she may identify the person as a "John Doe" or "Jane Doe" defendant, so long as she describes the person

and the person's conduct in enough detail to allow the person to be identified through discovery. *See Schiff v. Kennedy*, 691 F.2d 196, 197–98 (4th Cir. 1982).

***F. Timeliness***

Section 1983 has no statute of limitations of its own, so federal courts apply the forum state's limitations period for personal injury actions. *Owens v. Okure*, 488 U.S. 235, 249–50 (1989). In West Virginia, that period is two years. W. Va. Code § 55-2-12(b). A claim accrues when the plaintiff knows or has reason to know of the injury that is the basis of the action. *Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995) (en banc). Plaintiff filed this action on October 13, 2026. (ECF No. 3). Several of the events she alleges, including the 2022 absence of a medical provider, the 2023 refusal of pain medication, and the March 27, 2024 procedure, occurred more than two years earlier. (*Id.* at 6–10).

The limitations period does not necessarily bar claims based on earlier events. When an inmate alleges an ongoing denial of adequate treatment for the same condition, the claim may be timely under the continuing violation doctrine as long as the denial of care continued into the limitations period. *DePaola v. Clarke*, 884 F.3d 481, 486–87 (4th Cir. 2018). Timeliness is an affirmative defense, and the Court does not resolve it at this stage. In her amended complaint, Plaintiff should include the date of each event and any facts showing that the denial of care was continuing.

***G. Other Possible Claims***

Plaintiff's allegations about the March 27, 2024 procedure, including that her unclothed body was left exposed to passing staff and inmates, (ECF No. 3 at 10), may be intended to raise a separate claim. Inmates retain a limited right to bodily privacy. *See Lee v. Downs*, 641 F.2d 1117, 1119–20 (4th Cir. 1981). If Plaintiff intends to assert such a

claim, she must say so, identify the persons responsible, and address the timeliness of the claim.

***H. One Single Document***

Plaintiff is advised that her Amended Complaint will supersede the original Complaint and should therefore contain all claims, factual allegations, and Defendants that Plaintiff wishes the Court to consider. *See Young v. City of Mount Ranier*, 238 F.3d 567, 572 (4th Cir. 2001). Plaintiff should not rely upon the original Complaint or any other prior filing to supply allegations or claims omitted from the Amended Complaint. Rather, Plaintiff should include all allegations and facts relevant to her claims in one single Amended Complaint.

## V. <u>Conclusion</u>

For the reasons stated above, Plaintiff's Application to Proceed Without Prepayment of Fees and Costs, (ECF No. 1), is **GRANTED**. Lakin Correctional Center is **ORDERED** to withdraw the initial partial filing fee of $26.51 from Plaintiff's inmate account and forward it to the Clerk of Court within **thirty (30) days** of entry of this Order or, if the account lacks sufficient funds during that period, as soon as sufficient funds become available. If Plaintiff's inmate account lacks sufficient funds to pay the initial partial filing fee, Plaintiff shall, within the same thirty-day period, notify the Court of that circumstance in writing and submit a current copy of her inmate account statement demonstrating her inability to make the initial partial payment.

Plaintiff's Motion for Appointment of Counsel, (ECF No. 4), is **DENIED** without prejudice. Plaintiff is further **ORDERED** to file, on or before **November 18, 2026**, an Amended Complaint pursuant to 42 U.S.C. § 1983 using the Court-approved form provided by the Clerk of Court. Plaintiff's Amended Complaint must comply with the

requirements set forth herein and must be filed as one complete, stand-alone document. In her Amended Complaint, Plaintiff shall:

1. Identify by name each individual or entity that Plaintiff contends violated her federal constitutional rights. To the extent Plaintiff does not know the name of a particular individual, Plaintiff shall identify that person as specifically as possible, including, if known, the individual's position or job title, employer, work location, and other information that may assist in identifying the individual;
2. Separately state the factual basis for each claim, including the approximate date and location of the relevant events;
3. Explain what each Defendant personally did or failed to do that Plaintiff contends violated her federal constitutional rights;
4. To the extent Plaintiff intends to assert a claim against Wexford, identify the policy, practice, or custom of Wexford that she contends caused her injury, and state the period during which Wexford was responsible for her medical care;
5. To the extent Plaintiff intends to assert a claim concerning the denial of a wound vacuum at "collegial review," identify who conducted that review, if known;
6. To the extent Plaintiff seeks injunctive relief, name the state official responsible for providing that relief, in his or her official capacity;
7. State any facts showing that the denial of medical care continued over time;
8. To the extent known, identify the federal constitutional right that Plaintiff contends was violated by each Defendant; and

9. Clearly and simply state the relief Plaintiff seeks from this Court.

Plaintiff is hereby **NOTIFIED** that the Amended Complaint will supersede the original Complaint and become the operative pleading in this action. Therefore, Plaintiff must include in the Amended Complaint all claims, factual allegations, and Defendants that she wishes the Court to consider and may not rely upon or incorporate by reference allegations contained in the original Complaint or any other prior filing. Plaintiff is further **NOTIFIED** that failure to file an Amended Complaint on or before November 18, 2026, may result in a recommendation that this action be dismissed for failure to prosecute and failure to comply with an order of the Court. *See* Fed. R. Civ. P. 41(b); L. R. Civ. P. 41.1. Finally, Plaintiff is further **NOTIFIED** that she is responsible for notifying the Clerk of Court of any change in her address or other contact information. Failure to do so may result in a recommendation of dismissal of this action.

The Clerk is directed to provide Plaintiff with a blank form Complaint pursuant to 42 U.S.C. § 1983 and a copy of this Memorandum Opinion and Order. The Clerk is further directed to send a copy of this Memorandum Opinion and Order to the appropriate financial officer at Lakin Correctional Center.

**ENTERED:** October 20, 2026

/s/ James P. Mazzone
JAMES P. MAZZONE
UNITED STATES MAGISTRATE JUDGE